UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

REGAL SUMMER OWENS,

               Plaintiffs,

  -against-

DELTA AIRLINES, INC.,
SEDGWICK CLAIMS
MANAGEMENT SERVICES, INC.,
YUDELKA JONES, and JUAN J.
DIAZ,

               Defendants.

**MEMORANDUM AND ORDER**
Case No. 1:23-CV-02114-FB-PK

*Appearances:*
*For the Plaintiff:*
NATASHA A. MOSKVINA
Moskvina Law, PLLC
112 West 34th Street, 18th Floor
New York, NY 10120

*For Delta Defendants:*
BRENDAN THOMAS KILLEEN
Morgan Lewis and Bockius
101 Park Avenue
New York, NY 10178
JADE YEE
Morgan Lewis and Bockius
110 N Wacker Drive
Chicago, IL 60606

*For Sedgwick:*
DANIEL RYAN AXELROD
PETER T. SHAPIRO
Lewis Brisbois Bisgaard & Smith LLP
77 Water Street, Suite 2100
New York, NY 10005

**BLOCK, Senior District Judge:**

      Plaintiff Regal Summer Owens ("Owens" or "Plaintiff") brings this suit

against her former employer Delta Airlines, Inc. ("Delta"), Delta employees

1

Yudelka Jones ("Jones") and Juan Diaz ("Diaz") (together, "Delta Defendants"), and Sedgwick Claims Management Services, Inc. ("Sedgwick") (collectively, "Defendants"). Against Delta, Plaintiff asserts: disability discrimination under the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") for (i) failure to accommodate and (ii) discriminatory discharge; (iii) retaliation under the ADA, the NYSHRL, and the NYCHRL; (iv) whistleblower retaliation under New York Labor Law ("NYLL") § 740; and (v) unlawful interference and retaliation under the Family and Medical Leave Act ("FMLA"). Plaintiff brings individual claims against Jones and Diaz for: (i) unlawful interference and retaliation under the FMLA, and (ii) aiding and abetting liability pursuant to the NYSHRL and the NYCHRL. Plaintiff also asserts aiding and abetting liability under the NYSHRL and the NYCHRL against Sedgwick.[1]

Delta Defendants have moved for summary judgment under Federal Rule of Civil Procedure 56. Sedgwick has also separately moved for summary judgment. For the following reasons, Defendants' motions are GRANTED in part and DENIED in part.

---

[1] The parties stipulated to the dismissal of all other federal and state claims alleged in the Amended Complaint. *See* Stipulation and Order, ECF No. 28.

# I.

The facts presented here and in the Discussion section are taken from the pleadings, the parties' Rule 56.1 statements, and supporting documentation. They are undisputed unless otherwise noted. The Court construes all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in that party's favor. *See LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 205 (2d Cir. 2005).

### a. Plaintiff's employment before first accommodations request

"Plaintiff began working for Delta as a Flight Attendant based out of Minneapolis, Minnesota, on June 4, 2018," transferring "to the New York City base" in October 2018. Defs.' Reply to Pl.'s Resp. to Delta Def.'s Stmt. of Undisputed Material Facts at ¶¶ 13–14, ECF No. 66-1 [hereinafter "Delta SOF"]. At the time, Plaintiff's Field Service Managers ("FSMs") included Tammey Graham and Daniel Belam. *Id.* at ¶ 15. "Flight Attendants report to" FSMs, "who in turn report to Base Managers or Senior Base Managers." *Id.* at ¶ 11.

On November 13, 2018, Graham gave Plaintiff a Corrective Action Notice ("CAN") for calling "in sick after report time during her probationary period." *Id.* at ¶ 76. Delta requires flight attendants to provide "sufficient notice when they will not be able to work a flight as scheduled," and failure to comply could subject a flight attendant "to performance development," including discipline. *Id* at ¶ 21.

3

FSMs determine whether a flight attendant's "failure to report or late call out constitutes an accountable event," warranting consequences like performance development, "on a case-to-case basis depending on the circumstances[.]" *Id.* at ¶ 24.

Plaintiff received her first Final Corrective Action Notice ("FCAN") on November 26, 2019, from Belam, for being "absent nine days on five occasions" since the November 2018 CAN. *Id.* at ¶¶ 78–79. On December 1, 2019, Plaintiff missed her report time after being found unresponsive in her hotel room. *Id.* at ¶ 80. Consequently, on January 14, 2020, Plaintiff was issued "another FCAN" by Belam and had to "meet with her FSM every six months." *Id.* at ¶ 81; Pl.'s Resp. to Def.'s Stmt. of Undisputed Material Facts at ¶ 26, ECF No. 67-98 [hereinafter "Sedgwick SOF"].

b. First accommodations request

That same month, Plaintiff submitted her first accommodations request to wear an alternative to the "Passport Plum" uniform (the "Plum uniform") Delta introduced in June 2018 and required flight attendants to wear. Delta SOF at ¶¶ 45–46. The Plum uniform caused "adverse reactions" in some flight attendants. *Id.* at ¶ 49; Sedgwick SOF at ¶ 50. "In response to a Delta employee request, the National Institute for Occupation Safety and Health ('NIOSH') of the Centers for Disease Control [and] Prevention conducted a health hazard evaluation of the Passport

4

Plum uniform," which acknowledged the "work-related skin problems" caused by the uniform. Delta SOF at ¶ 48.

Plaintiff wore the Plum uniform "from June 2018 to October 2020" and also suffered adverse reactions. Decl. Owens at ¶ 5, ECF No. 65-2. Among other symptoms, she experienced rashes and blisters across her body, anxiety, fatigue, fevers, headaches, and swelling. *Id.* at ¶¶ 7–8, 31.

"In January 2020, Plaintiff emailed Shelby Cox, General Manager In-Flight Admin Services, to state that she was 'having issues with the [Plum] uniform . . .'" Delta SOF at ¶ 55, and to request accommodations to wear an alternative black and white uniform ("B&W uniform") made by Delta's uniform manufacturer "from different fabrics," "without certain potential allergens," and without "the performance treatments and finishes applied to the Passport Plum uniform[,]" *id.* at ¶ 50. Plaintiff then, at Cox's direction, submitted the request to a centralized email box on March 11, 2020. *Id.* at ¶¶ 56–57. Plaintiff continued to wear the Plum Passport uniform until she learned from Belam six months later—in September 2020—that Delta approved her request. *Id.* at ¶ 58.

c. <u>Second accommodations request</u>

"In or around October 2021, Delta began communicating to flight attendants that it would be rolling out a new OEKO-TEX [textile safety] certified 'Graphite Grey' uniform [("Grey uniform")] in 2022 and would be requiring all Flight

Attendants to be in [either a Grey or Plum] Delta brand uniform by May 2, 2022."
*Id.* at ¶ 61; Sedgwick SOF at ¶ 54. OEKO-TEX tested the Grey uniform, made
from different materials than the Plum uniform, to ensure that it did not contain
harmful chemicals. Delta SOF at ¶¶ 59–60. The parties dispute whether the Grey
uniform actually contained such chemicals. *Id.* at ¶ 60. Delta points to the OEKO-
TEX certification, while Plaintiff asserts that the "Flight Attendants Union" found
that "at least six pieces of the Grey uniform" actually worn by flight attendants
"were dangerous to health and should be recalled immediately," with one even
exceeding "the OEKO-TEX standard for chromium." *Id.*

    To facilitate this transition, Delta "developed a one-to-one strategy, which
included talking points for leaders, to individually reach out to employees that had"
approved accommodations to wear the B&W uniform "to ensure that they were
familiar with Delta's expectations with respect to the uniforms[.]" *Id.* at ¶ 63. This
strategy included telling flight attendants that they would not receive "a flying
schedule for the May [2022] bid period" unless they wore a "Delta-approved
uniform" by May 2, 2022, and that those with accommodations requests pending
on May 2 would be placed on unpaid leave. Accommodations Conversations Doc.
at 1, ECF No. 65-66; Decl. Owens at ¶ 24.

    Further, flight attendants with existing uniform accommodations would have
to reestablish their need because "Delta rolled out a new uniform made from

different fabrics and materials than the uniform for which Plaintiff had previously been accommodated[.]" Defs.' Reply Mem. at 10, ECF No. 66. At this time, Delta also changed its process for requesting uniform accommodations to require "a request form and medical documentation from a health care provider that identified and supported the requested accommodation," Delta SOF at ¶ 64, as opposed to only having to email a request without any supporting documents, *id.* at ¶ 52.

Plaintiff wore the B&W uniform from October 2020 until January 2, 2022. Decl. Owens at ¶ 17. Once Plaintiff began to wear the Grey uniform, she experienced more complications than with the Purple uniform. Delta SOF at ¶ 65. She resumed wearing her B&W uniform from March 8, 2022, until May 1, 2022. Decl. Owens at ¶ 17.

On March 14, 2022, Plaintiff emailed Jones, who replaced Belam as Plaintiff's FSM in November 2021, Delta SOF at ¶¶ 15–17, stating that she was absent the prior day due to symptoms from previously wearing the Grey uniform, *id.* at ¶ 65. Jones directed Plaintiff to "email the uniform team" to request accommodations. *Id.* at ¶ 66. After submitting the request form on March 15, uniform team member Genie Levin informed Plaintiff that her information had been provided "to the accommodation team to begin the accommodation process." *Id.* at ¶ 68; *see* Pl.'s Exh. 12 at 2, ECF No. 65-14. Plaintiff was also required to submit an On The Job Injury ("OJI") claim with Sedgwick, the "third-party

administrator handling Delta's workers compensation, short- and long-term disability benefits, and . . . [FMLA] claims." Sedgwick SOF at ¶ 2. But failing to do so would not delay her accommodations request. *See* Delta Reply Exh. G, ECF No. 66-9.

On March 23, and again on March 30, the accommodation team reminded Plaintiff that it would close her request unless she submitted the required medical documentation by April 6. ECF No. 65-14 at 2–3. On April 6, the accommodations team closed Plaintiff's request without foreclosing the opportunity to reopen it. *Id.* at 1. Then, on April 23, Plaintiff emailed Levin that she would "end the accommodation process" if it involved "moving [her] to another department" because she "want[ed] to stay in flight." ECF No. 66-9 at 2. On April 28, Levin called Plaintiff "and said that [she] would not be authorized to fly if [she] still wore the Black and White Uniform on May 2, 2022." Decl. Owens at ¶ 48. In response, Plaintiff withdrew her accommodations request. Delta SOF at ¶ 70.

Delta considered its uniform transition "communication strategy . . . incredibly effective." Yamamoto Tr. at 137:14–38:4, ECF No. 65-89. Of the 11,000 flight attendants in the B&W uniform before May 2, 2022, only 14 "were still support[ed] through the accommodation process." *Id.* at 137:17–22.

d. <u>Suspension and termination</u>

After Belam verbally coached Plaintiff for another reliability incident in April 2021, he recommended her termination in October 2021 for reliability issues. Delta SOF at ¶¶ 85–86. Senior base leadership rejected Belam's recommendation and instead issued more verbal coaching. *Id.* at ¶ 87.

Between August 22, 2019, and May 2022, Sedgwick granted 49 requests by Plaintiff for FMLA leave, "none of which were held accountable against her." *Id.* at ¶¶ 36, 38. But Plaintiff still accumulated "12 additional accountable events since her [December 2019] FCAN," leading Jones, in March 2022, to initiate "the process to recommend that Plaintiff's employment be suspended and reviewed for further employment action." *Id.* at ¶ 16. Sometime in May 2022, Jones formally "submitted her recommendation for review by base management," *id.* at ¶ 89, which included "Diaz, his supervisor Anissa Khalaf, Corporate Director Andrea Misserian, and Managing Director Tanya Morgan," *id.* at ¶ 91.

Diaz and Jones informed Plaintiff of her suspension on May 26, 2022. *Id.* at ¶ 93. "On or around May 31, 2022, Jones prepared a 'Recommendation for Termination of Employment' ('RFT') of Plaintiff for attendance and reliability[,]" *id.* at ¶ 94, approved by Diaz, Khalaf, and Human Resources, *id.* at ¶ 96. Plaintiff "was informed that her employment was being terminated on June 29, 2022." *Id.* at ¶ 98.

## II.

Summary judgment is appropriate only if the pleadings, the discovery materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "resolv[e] all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019). The court must also exercise "caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent." *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008).[2]

## III.

Defendants move for summary judgment on all of Plaintiff's remaining claims, including those brought simultaneously under the ADA, the NYSHRL, and the NYCHRL. Before 2019, courts in the Second Circuit analyzed NYSHRL discrimination and retaliation claims under the same standard as their federal variant. *See, e.g.*, *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015). The Circuit also required courts to "analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's

---

[2] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

10

provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

But in 2019 the NYSHRL was amended "to align with the NYCHRL's more liberal pleading standard.'" *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 123 (2d Cir. 2024) (citing N.Y. Exec. Law § 300 (2023)). Because the NYSHRL's amended "language largely mirrors that of the NYCHRL," courts in both the Eastern and Southern districts "have interpreted the [NYSHRL] amendment to render the standard for claims [under the NYSHRL] closer to the standard of the NYCHRL." *Dixon v. City of New York*, No. 23-CV-8941, 2025 WL 50140, at *12 (S.D.N.Y. Jan. 7, 2025) (collecting cases); *see, e.g.*, *Hamilton v. Federal Savings Bank*, No. 21-CV-06852, 2024 WL 4132373, at *12 n.24 (E.D.N.Y. Sept. 10, 2024); *Tillman v. Grenadier Realty Corp.*, No. 21-CV-4827, 2024 WL 3758803, at *15 (E.D.N.Y. Aug. 12, 2024).

The Court agrees and joins those courts in applying "the more liberal NYCHRL standard to Plaintiff's NYSHRL" failure to accommodate, discriminatory discharge, and retaliation claims. *Dixon*, 2025 WL 50140 at *12.

a. <u>Failure to accommodate</u>

The ADA, the NYSHRL, and the NYCHRL require an employer to afford reasonable accommodations of an employee's known disability unless the

11

accommodations would impose an undue hardship on the employer. *Noll*, 787 F.3d at 94 (ADA and NYSHRL); N.Y.C. Admin. Code § 8-107(1)(a) (NYCHRL). The burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973) governs such claims. *See Tafolla v. Heilig*, 80 F.4th 111, 118 (2d Cir. 2023) (ADA and NYSHRL); *Ya-Chen Chen v. City University of New York*, 805 F.3d 59, 75–76 (2d Cir. 2015) (NYCHRL).

"To make out a *prima facie* disability discrimination case based upon a failure to accommodate, a plaintiff must establish that: (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Tafolla*, 80 F.4th at 118–19.

Plaintiff asserts that Delta failed to accommodate her in two instances: (1) the six-month delay in receiving notice that Delta granted Plaintiff's March 2020 accommodations request, and (2) the second accommodations process in March 2022 that did not result in approved accommodations. Defendants contest the third and fourth elements of Plaintiff's *prima facie* case for both instances.[3]

---

[3] "Because defendants here only contest [Plaintiff's] claims on the ground that she has failed to set forth a sufficient *prima facie* case, we have no need to examine whether [Plaintiff's] proposed accommodation would present undue hardships for the defendants and would therefore be unreasonable." *Tafolla*, 80 F.4th at 118.

### 1. Third element: Qualified

A "qualified individual" is "one who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 148 (2d Cir. 2024). Plaintiff's "burden is not heavy: It is enough for the plaintiff to suggest the existence of a plausible accommodation, the cost of which, facially, do not clearly exceed its benefits." *McMillan v. City of New York*, 711 F.3d 120, 127 (2d Cir. 2013); *see Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 138 (2d Cir. 1995) (explaining that plaintiff can prove that she can perform without accommodations or that "an accommodation exists that permits her to perform the job's essential functions").

It is undisputed that reliability and timeliness are essential functions of a flight attendant's job. Delta SOF at ¶¶ 18–19. The parties only dispute whether Plaintiff could meet Delta's reliability requirements by regularly and timely attending work even with the B&W uniform accommodation. Defendants argue that Plaintiff's reliability infractions even while wearing the B&W uniform render her unqualified. Plaintiff responds that she had fewer accountable occurrences while wearing the B&W uniform and Defendants have not produced evidence showing otherwise.

13

Plaintiff also emphasizes that Delta tolerated reliability infractions to varying degrees for individual flight attendants, without a policy designating how many absences disqualify a flight attendant from their job. She points to the "8+ list," which tracks the discipline and performance development of fight attendants with eight or more reliability infractions, and Delta's differential treatment of flight attendants on it. *See* ECF Nos. 65-27, 65-31, 65-82. Defendants retort that, either way, those on the 8+ list are not proper comparators because their disciplinary histories vary from Plaintiff's.

A reasonable jury could find that Plaintiff's accommodations rendered her qualified if issues with the uniform caused her reliability infractions. That Plaintiff incurred infractions while wearing the B&W uniform is not dispositive because she could experience lingering issues from previously wearing the Plum or Grey uniform. Even so, Delta could have inconsistently applied its reliability policy to individuals on the 8+ list, suggesting that such infractions do not automatically render a flight attendant unqualified. And, if Delta consistently applied its policy, there still exists a genuine dispute as to whether those on the 8+ list are proper comparators. *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493–94 (2d Cir. 2010) (explaining that plaintiff and comparators must be similarly situated to constitute proper comparators).

14

Thus, a reasonable jury could disagree as to whether Plaintiff's reliability infractions while approved to wear the B&W uniform rendered her unqualified. That conclusion holds under both the NYSHRL and the NYCHRL, which compartmentalize plaintiff's qualification "as an affirmative defense" and "not an element of a *prima facie* case." *Williams v. MTA Bus Co.*, 44 F.4th 115, 137 (2d Cir. 2022); *see Burgess v. New Sch. Univ.*, No. 23-CV-4944, 2024 WL 4149240, at *18 (S.D.N.Y. Sept. 11, 2024) (explaining that claims surviving under ADA also survive under NYSHRL and NYCHRL as they "are at least as protective as the ADA").

### 2. *Fourth element: Failure to provide reasonable accommodations*

The parties also dispute whether Delta's treatment of Plaintiff's first and second accommodations requests constitute a refusal to provide accommodations.

Regarding the first accommodations request made in March 2022, the parties dispute how long approval took. Delta SOF at ¶ 58. Delta asserts that it approved Plaintiff's request the same day she submitted it and that she never sought updates on it, whereas Plaintiff contends that Delta issued the approval letter six months after she submitted her request, when Belam updated her about its status in September 2020. *See Id.*

"A refusal of a request for a reasonable accommodation can be both actual or constructive, such as where the request for accommodations is met with indeterminate delay instead of outright denial." *Austin v. Town of Farmington*, 826 F.3d 622, 629 (2d Cir. 2016). Plaintiff identifies testimony supporting her assertion that Delta "cannot establish the date on which it provided the accommodation letter." *See* Pl.'s Mem. Opp'n to Delta at 10, ECF No. 65. Defendants retort that Delta's records establish that "the authorization was granted and sent on March 11, 2020." Delta Defs.' Reply Mem. at 9 n.5, ECF No. 66 [hereinafter "Delta Reply"]. Thus, there exists a "credibility determination" inappropriate for summary judgment as to whether Delta or Plaintiff caused any delay. *See Porter*, 92 F.4th at 147.

Defendants also argue that any delay caused by Delta "was inadvertent," exacerbated by the COVID-19 pandemic, and did not stem from discriminatory intent. *Id.* at 5. However, the Second Circuit has "never specifically addressed in a precedential opinion" whether a failure to accommodate claim predicated on an alleged delay requires proof of discriminatory intent. *Perkins v. City of New York*, No. 22-CV-196, 2023 WL 370906, at *3 (2d Cir. Jan. 24, 2023) (summary order). The Court takes the position that such a claim does not require proof of discriminatory intent because any indeterminate delay in providing accommodations itself evidences bad faith, at least on summary judgment.

16

But even if delay claims require such proof, Plaintiff has demonstrated a genuine dispute as to whether any delay was in bad faith. Plaintiff asserts that she "did not follow up" until September 2020 because she "was afraid to lose [her] job" for wearing the B&W uniform. Decl. Owens at ¶ 16. The record also includes an affidavit from another flight attendant describing "hazing" she experienced from "other Delta employees" for wearing the B&W uniform. Aff. Smith at ¶ 12–14, ECF No. 65-67. A reasonable jury could disagree on this issue and should resolve it, especially given the Circuit's repeated cautions against deciding questions of intent on summary judgment. *See, e.g.*, *Holcomb*, 521 F.3d at 137; *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001). The NYSHRL and NYCHRL analyses yield the same conclusion for Plaintiff's first failure to accommodate claim.

Plaintiff's second failure to accommodate claim stems from her March 2022 request to wear the B&W uniform after May 2, 2022, the date by which Delta would no longer honor unrenewed accommodations letters. *See* Accommodations Conversations Doc. at 2. Defendants argue that Plaintiff caused a breakdown in the interactive process by withdrawing her request on April 28, 2022. "An employee who is responsible for a breakdown of [the] interactive process may not recover for a failure to accommodate." *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 946 (2d Cir. 2008) (summary order). Plaintiff responds that Delta unilaterally

17

ended the interactive process when it closed her case on April 6, 2022. Decl. Owens at ¶ 45.

Defendants correctly retort that the Court cannot consider Plaintiff's declaration that she believed Delta closed her request on April 6 because it contradicts Plaintiff's prior testimony that her request remained pending as of April 19. *See* Delta SOF at ¶ 70. There exists no "plausible explanation for [the] discrepancies" between Plaintiff's prior testimony and her later declaration. *Frost v. New York City Police Dep't*, 980 F.3d 231, 246 (2d Cir. 2020) (describing exception to general rule prohibiting credibility assessments by court on summary judgment as "rare circumstance" where party relies exclusively on own testimony that no reasonable juror could credit (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554–55 n.2 (2d Cir. 2005))); *see* Decl. Owens at ¶ 45. The Court must thus credit Plaintiff's prior testimony. For that reason, and because Delta allowed her to reopen the request, there is no dispute that Delta's April 6 closure did not end the interactive process. No evidence justifies a different outcome under either the NYSHRL or the NYCHRL.

However, Plaintiff withdrawing her request does not alone mean she obstructed the interactive process. "The last act in the interactive process is not always the cause of a breakdown . . . and courts must examine the process as a whole to determine whether the evidence requires a finding that one party's bad

faith caused the breakdown." *Tafolla*, 80 F.4th at 124; *see Malzberg v. N.Y. Univ.*, No. 19-CV-10048, 2022 WL 889240, at *15 (S.D.N.Y. Mar. 25, 2022) (stating that courts must "isolate the cause of the breakdown and then assign responsibility" by "look[ing] for signs of good faith and bad faith"). "An employee's withdrawal . . . may be excused where defendant's statements effectively indicated that the defendant had no intention of engaging in the interactive process in good faith with the plaintiff." *Malzberg*, 2022 WL 889240 at *15. "Courts must deny . . . motions for summary judgment when presented with conflicting facts about the provenance of a breakdown." *Id*.; *Tafolla*, 80 F.4th at 122; *see also Quadir v. N.Y. State Dep't of Lab.*, 39 F. Supp. 3d 528, 540 (S.D.N.Y. 2014).

Plaintiff argues that she withdrew her request on April 28 because Delta coerced flight attendants, including Plaintiff, to not seek accommodations by threatening to place them on unpaid leave or not give them a flying schedule unless they wore the Plum or Grey uniform. *See* Accommodations Conversations Doc.; Delta SOF at ¶ 71; Decl. Owens at ¶¶ 24–28, 48. Plaintiff argues that Delta, motivated by its uniform transition strategy goal of having all flight attendants wear either the Plum or Grey uniform by May 2, 2022, sought to limit how many flight attendants requested uniform accommodations.

Defendants dispute that characterization and respond that Plaintiff had nothing to fear because she received a May flight schedule. But Plaintiff received

this schedule before May began and before she withdrew her request. A reasonable jury could infer that Delta could have still revoked Plaintiff's flight schedule after May 2 if she did not receive accommodations by then. *See* Accommodations Conversation Doc. at 1; *Tafolla*, 80 F.4th at 125 (explaining that in assessing which party caused breakdown in interactive process, "competing inferences (along with any credibility assessments necessary to draw such inferences) cannot be resolved by a court on summary judgment"). And a jury could infer that the "foreseeable and intended result of" Delta's uniform transition strategy was for flight attendants to withdraw their accommodations requests. *Tafolla*, 80 F.4th at 125; *see* Yamamoto Tr. at 137:17–22. There thus exist genuine disputes as to who caused the breakdown and whether Plaintiff "could have been reasonably accommodated but for the employer's lack of good faith." *Malzberg*, 2022 WL 889240 at *15. Both the NYSHRL and the NYCHRL analyses counsel the same conclusion.

Hence, there exist reasonable disputes precluding summary judgment as to whether Plaintiff was qualified, whether Plaintiff or Delta caused any delay involving her first request, and, if Delta did cause the delay, whether it did so in bad faith. There also exists a reasonable dispute regarding if Plaintiff withdrew her second request because of Delta's bad faith.

b.  Discriminatory discharge

Plaintiff's discriminatory discharge claims under the ADA, the NYSHRL, and the NYCHRL are all governed by the *McDonnell Douglas* framework. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (ADA); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (NYSHRL and NYCHRL). "To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of [her] disability." *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020). Plaintiff's burden here is "minimal and de minimis." *See Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 468 (2d Cir. 2019).

"If the plaintiff succeeds in establishing a *prima facie* case of discrimination, a presumption of discrimination arises, and the burden shifts to the defendant, who must proffer some legitimate nondiscriminatory reason for the adverse action." *Spiegel*, 604 F.3d at 80. "If the defendant proffers such a reason, the presumption of discrimination . . . drops out of the analysis, and the defendant will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably

supports a finding of prohibited discrimination . . . [by showing] that the legitimate reason offered by the defendant is actually pretext for discrimination." *Id.*

Plaintiff argues that Delta suspended and terminated her in May and June 2022 respectively because she requested accommodations in March 2022. Defendants dispute the third and fourth elements of Plaintiff's *prima facie* case and argue that Delta terminated Plaintiff for reliability issues.

### 1. *Prima facie* case

Because the Court identified a genuine dispute as to Plaintiff's qualification in section III(a)(1), Plaintiff's *prima facie* case hinges on the fourth element— whether Plaintiff was terminated because of her disability. That "can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

Under the ADA, summary judgment is inappropriate where a reasonable jury could conclude that Delta would not have terminated Plaintiff but-for her disability. *See Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019). The NYSHRL and the NYCHRL place a lower burden on Plaintiff, precluding summary judgment where "no reasonable jury could conclude . . . that discrimination played a role in

the defendant[s'] actions." *Ya-Chen Chen*, 805 F.3d at 76; *Mihalik*, 715 F.3d at 110

n.8 (explaining that NYCHRL only requires plaintiff to "show that her employer

treated her less well, at least in part for a discriminatory reason"). Causation "is

particularly poorly suited to disposition by summary judgment, because it requires

weighing of the disputed facts[.]" *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d

834, 846 n.5 (2d Cir. 2013).

Defendants argue that Delta terminated Plaintiff because she failed to meet

reliability requirements, including timely attendance and compliance with its

absence notification policy. Plaintiff responds that Delta terminated her because

she requested accommodations in March 2022 and raised concerns about the Grey

uniform's safety amidst Delta's transition towards requiring all flight attendants to

wear the Grey or Plum uniform. In support, Plaintiff proffers a slew of

circumstantial evidence littered with reasonable disputes, the most significant

being evidence of differential treatment and temporality.

As to differential treatment, Plaintiff points to Delta's varying tolerance of

reliability infractions of flight attendants on the 8+ list, as discussed in section

III(a)(1). The list included sixteen JFK-based flight attendants, excluding Plaintiff,

who all had eight or more reliability infractions. Pl.'s Exh. 30 at 3, ECF No. 65-32.

Plaintiff argues that, because Delta treated flight attendants on the 8+ list

differently, a reasonable jury could infer that some other consideration motivated

Plaintiff's termination. Defendants respond that flight attendants on the 8+ list are not proper comparators because the record lacks evidence establishing their individual circumstances and disciplinary history. That claim mischaracterizes the evidence, which broadly details the individual histories of and discipline given to those on the list. *See* ECF Nos. 65-27, 65-31, 65-82. There thus exists a reasonable dispute as to whether all flight attendants on the 8+ list are proper comparators similarly situated to Plaintiff. *See Ruiz*, 609 F.3d at 493–94 ("An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct.").

Plaintiff also identifies a specific comparator on the 8+ list. Delta retained this comparator, who had an RFT in his reliability report and more accountable occurrences than Plaintiff. *See* ECF Nos. 65-27, 65-82. Delta responds that Plaintiff cherry-picked this comparator from 4,700 flight attendants working at JFK in May 2022, providing an "utterly unreliable and . . . skewed perspective." *Holowecki v. Fed. Exp. Corp.*, 644 F. Supp. 2d 338, 356 (S.D.N.Y. 2009), *aff'd*, 382 F. App'x 42 (2d Cir. 2010). But that is not true. Plaintiff picked this comparator from a small pool of employees— sixteen, excluding plaintiff—who are on the JFK 8+ list for having eight or more reliability infractions, the reason given for Plaintiff's termination. *Cf. id.* (considering comparator "cherry-picked" when chosen from general pool of all "younger couriers during the period 2003-

24

2005"). A reasonable jury could conclude that Plaintiff is similarly situated to this comparator based on their presence on the 8+ list, which constitutes a shared characteristic germane to Delta's stated reason for terminating Plaintiff— reliability. *See Ruiz*, 609 F.3d at 493–94.

Defendants again assert that Plaintiff has not provided any admissible evidence showing that her and the specific comparator are similarly situated. Still, the record includes evidence that details some of the comparator's disciplinary and reliability history.[4] *See* ECF Nos. 65-27, 65-82. And Defendants have not introduced contrary evidence. *Cf. Holowecki*, 644 F. Supp. 2d at 356 (looking to "exhaustive comparisons" provided by employer to undermine those provided by employee). Thus, there exists a genuine issue of fact as to whether Plaintiff and the specific comparator are similarly situated by being on the 8+ list.

Regarding temporality, Plaintiff argues that the closeness between her March 2022 request and her May 2022 suspension, which led to her June 2022 termination, evidences discriminatory intent, especially given Delta's contemporary "apparent desire" and requirement that all flight attendants wear either the Plum or Grey uniform after May 2, 2022. *Cf. Holcomb*, 521 F.3d at 140 (finding discriminatory motive where, amidst other evidence of intent, employer

---

[4] Defendants also retort that any evidence establishing the comparator's suitability constitutes hearsay. The Court came to its decision without considering any arguably-hearsay evidence. Either way, the comparator could be called to testify at trial. *See* Fed. R. Evid. 801(c).

"had an incentive, for the purpose of alumni relations, to minimize the number of African Americans involved with the basketball team"). Defendants respond that Plaintiff's suspension and termination resulted from the gradual performance development that Plaintiff received for reliability infractions throughout her employment.

However, that alone does not dispel an inference of discrimination "where the employer was aware that an employee's absences were related to a disability." *Morris v. City of New York*, 153 F. Supp. 2d 494, 502 (S.D.N.Y. 2001) (explaining circumstances where "employee's attendance record may be an impermissible pretext for the employee's disability"); *see also Tafolla*, 80 F.4th at 125 (agreeing that summary judgment is inappropriate where absences were "foreseeable and intended result" of not accommodating plaintiff). Delta knew that Plaintiff requested accommodations for her disability and that she filed an OJI with Sedgwick regarding her disability. *See* Pl.'s Exh. 79 at 3, ECF No. 67-82. Delta then suspended Plaintiff because of her accountable reliability infractions, which could have stemmed from Plaintiff's disability. *Id.* In the light most favorable to the nonmovant, these facts create a reasonable dispute as to whether Delta relied on reliability infractions caused by Plaintiff's disability to suspend and terminate her.

For these reasons, Plaintiff has satisfied the minimal burden to establish her *prima facie* case. Plaintiff's evidence of differential treatment and temporality could alone make a reasonable jury disagree on whether Delta terminated Plaintiff because of her disability. The lower burden under both the NYSHRL and the NYCHRL yields the same conclusion.

### 2. Legitimate non-discriminatory reason

The burden then shifts to Delta to proffer a legitimate, non-discriminatory reason explaining its decision to terminate Plaintiff. Delta asserts that Plaintiff's reliability issues throughout her employment, including her 2018 CAN and 2019 FCAN, led to a gradual performance development program that resulted in her termination. This reason sufficiently rebuts the presumption of discrimination established by Plaintiff's *prima facie* case.

### 3. Pretext

Plaintiff lastly, under the ADA, bears the burden of showing that Delta's proffered legitimate reason for her termination was pretext for discrimination. The NYSHRL and the NYCHRL allow Plaintiff to show either that Delta's reasons were pretextual "or that the defendant's stated reasons were not its sole basis for taking action." *Ya-Chen*, 805 F.3d at 76 (explaining that court should grant defendant summary judgment on NYCHRL claim only if record shows that discrimination played "no role" in adverse employment action). Plaintiff meets

those burdens and sufficiently undermines Delta Defendants' proffered reason to raise triable issues of fact.

Plaintiff's temporality inference, discussed in section III(b)(1), could alone undermine Defendants' argument that Delta terminated her for reliability reasons. *See Morris*, 153 F. Supp. 2d at 502 (finding pretext where employer's legitimate reason relied on absences caused by employee's disability). "When the parties agree that the employer complains of conduct that is the direct result of the employee's disability, however, there is no need to evaluate whether the employer's adverse employment action made in response to that conduct is pretextual." *McMillan*, 711 F.3d at 129. Summary judgment would thus be inappropriate here as the parties dispute whether Plaintiff's absences were caused by adverse reactions to the Plum and Grey uniforms.

Therefore, viewed in the light most favorable to the nonmovant, Plaintiff's evidence of temporality and differential treatment of other flight attendants on the JFK 8+ list raise a triable question of fact as to pretext and to whether disability discrimination was a but-for reason for Plaintiff's termination. A reasonable jury could find such if it concludes that Plaintiff accumulated accountable reliability infractions because of her disability and that flight attendants on the JFK 8+ list are similarly situated to Plaintiff. The same conclusion holds under both the NYSHRL and the NYCHRL.

28

c. Retaliation

The *McDonnell Douglas* framework governs retaliation claims under the ADA, the NYSHRL, and the NYCHRL. *Tafolla*, 80 F.4th at 125 (ADA and NYSHRL); *Ya-Chen*, 805 F.3d at 75–76 (NYCHRL). The *prima facie* elements of a retaliation claim under the ADA are "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Tafolla*, 80 F.4th at 125. The broader coverage afforded by the NYSHRL and the NYCHRL only requires Plaintiff to "show that [s]he took an action opposing [her] employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112; *see also Bilitch v. N.Y.C. Health & Hosps. Corp.*, 194 A.D.3d 999, 1004 (App. Div. 2d Dep't 2021) (requiring causation between protected activity and employer's action). Requesting reasonable accommodations constitutes protected activity.[5] *Weixel v. Bd. of Educ. of N.Y.*, 287

---

[5] Although the NYSHRL does not explicitly characterize requesting accommodations as protected activity, *D'Amico v. City of New York*, 159 A.D.3d 558, 558–59 (App. Div. 1st Dep't 2018), the NYSHRL was amended in 2019 to be more in line with NYCHRL. The Court construes the NYSHRL, which does not explicitly prohibit such characterization, to treat requesting accommodations as protected activity.

F.3d 138, 149 (2d Cir. 2002) (ADA); New York City, N.Y., Local Law No. 129 Int. No. 799 (2019) (amending N.Y.C. Admin. Code § 8-107(7)).

"Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. If a defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002).

The parties here dispute the fourth element of Plaintiff's *prima facie* case, which requires Plaintiff to show "that the allegedly adverse actions occurred in circumstances from which a reasonable jury could infer retaliatory intent." *Treglia*, 313 F.3d at 720. That "causal connection in retaliation claims can be shown" through the evidence used to establish causation for a discrimination claim, including indirectly through temporality and differential treatment. *See Natofsky*, 921 F.3d at 353. "A close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation." *Treglia*, 313 F.3d at 720. And like with discrimination claims, the ADA requires but-for causation for retaliation claims while the NYSHRL and the NYCHRL only require motivating factor causation. *Natofsky*, 921 F.3d at 347 (ADA); *Mihalik*, 715 F.3d at 116 (NYCHRL).

30

Relying on the same arguments made regarding the fourth element of Plaintiff's discriminatory discharge *prima facie* case in section III(b)(1), the parties have presented evidence from which a reasonable jury could infer that Plaintiff has met her retaliation *prima facie* burden. Defendants make one unique argument here—that temporality alone is not enough to preclude summary judgment. That is especially true, Defendants argue, because Plaintiff's suspension and termination resulted from gradual discipline issued for reliability issues that occurred before her requests for accommodations and throughout her employment. It is true, at least under but-for causation, that "where timing is the *only* basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), *as amended* (June 6, 2001) (emphasis added). But Plaintiff has presented other evidence besides temporality, including that of similarly situated comparators on the 8+ list. *See Kwan*, 737 F.3d at 847 (explaining that temporality alongside other evidence can defeat summary judgment on retaliation claim).

Defendants also dispute Plaintiff's assertion of pretext and invoke a similar argument that "temporal proximity alone is insufficient to defeat summary judgment at the pretext stage." *Id.* Again, Plaintiff points to comparator evidence

31

that the Court has found sufficient to create a reasonable dispute regarding pretext under Plaintiff's discrimination claim. The same is true here.

It is for these reasons that a reasonable jury could find that Plaintiff established her *prima facie* case and has shown that Delta's proffered reason for suspending and terminating her was pretext for retaliation. The NYSHRL and the NYCHRL analyses bear the same conclusion.

### d. NYLL § 740

The NYLL § 740 whistleblower retaliation provision prohibits employers from, among other things, taking retaliatory action against an employee for "disclos[ing], or threaten[ing] to disclose to a supervisor or to a public body an activity, policy, or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation *or* that the employee reasonably believes poses a substantial and specific danger to the public health or safety." N.Y. Lab. Law § 740(2)(a) (emphasis added).

Defendants argue that Plaintiff did not engage in protected conduct under NYLL § 740. Plaintiff responds that she disclosed her health issues, inflicted by the Plum and Grey uniforms, to Jones. *See* ECF Nos. 65-7, 65-96 at 1. Defendants respond that Plaintiff has not presented any evidence showing that she raised concerns about the uniforms' harm to others. But that is not dispositive. What

32

matters is that Plaintiff reasonably believed the uniform posed a public health or safety risk. *See* N.Y. Lab. Law § 740(2)(a).

Plaintiff's communications to Jones could reasonably evidence that belief, especially given that Delta knew the Plum uniform caused adverse reactions in many flight attendants and that the Flight Attendants Union found harmful chemicals in the Grey uniform. *See Arazi v. Cohen Bros. Realty Corp.*, No. 20-CV-8837, 2022 WL 912940, at *13 (S.D.N.Y. Mar. 28, 2022) ("Courts have permitted [NYLL § 740] claims to proceed where only one individual would have potentially been impacted, let alone the numerous employees of Defendant."). Not only could the issue raised by Plaintiff harm other flight attendants wearing the Plum or Grey uniform, but it may also harm Delta flyers if flight attendants are distracted by discomfort and pain in a setting that necessitates quick reactions. *See Murray v. United Parcels Serv., Inc.*, No. 20-CV-1427, 2022 WL 4468295, at *19 (E.D.N.Y. Sept. 25, 2022) ("UPS's violations of DOT hours regulations creates [sic] a specific danger to public safety by putting over-worked and tired delivery drivers on the road that may cause accidents."). There thus exists a reasonable dispute at least to whether Plaintiff reasonably believed that the Plum or Grey uniform posed substantial and specific danger to public health and safety.

Defendants also argue that even if Plaintiff's communications constitute protected conduct, she has not presented evidence of causation or retaliatory intent.

As mentioned in the Court's discussion of retaliation, section III(c), there exist genuine disputes of fact regarding evidence of causation and retaliatory intent that similarly preclude summary judgment on Plaintiff's NYLL § 740 claim. That is especially true under NYLL § 740, which does not restrict the use of temporality evidence to the same degree as for ADA retaliation claims.

    e.  <u>FMLA claims</u>

Defendant correctly asserts that Plaintiff has conceded her FMLA claims for interference and retaliation against Delta, Jones, and Diaz by not addressing Defendants' arguments against them. *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143–44 (2d Cir. 2016). Hence, summary judgment is granted on Plaintiff's FMLA claims.

    f.  <u>Aiding and Abetting Liability</u>

Plaintiff also brings claims of aiding and abetting liability for disability discrimination against Jones, Diaz, and Sedgwick under both the NYSHRL and the NYCHRL. These statutes prohibit "aid[ing], abet[ting], compel[ling] or coerc[ing] the doing" of any unlawful acts of discrimination. N.Y. Exec. Law § 296(6); N.Y.C. Admin Code § 8-107(6). Both statutes apply the same standard, *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004), requiring Plaintiff to prove "that the defendant: (1) actually participated in the conduct giving rise to a discrimination or retaliation claim; and (2) shared the intent or purpose of the principal actor,"

*Roethel v. Softheon, Inc.*, No. 23-CV-7894, 2024 WL 4350618, at *4 (E.D.N.Y. Sept. 30, 2024). "A primary discrimination or retaliation claim is a prerequisite for bringing" such claims. *Id.*

### 1. Jones and Diaz

Delta Defendants argue that Plaintiff cannot establish aiding and abetting liability against Jones and Diaz because no underlying violation exists, and individual defendants cannot aid and abet their own conduct. These arguments fail as the Court has denied summary judgment on Plaintiff's discrimination and retaliation claims and the law in this Circuit enables aiding and abetting liability based on a defendant's own discriminatory conduct. *See Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995) (NYSHRL); *Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 459 (2021) (NYCHRL).

Even so, Delta Defendants assert that neither Jones nor Diaz interfered with the accommodations process or otherwise acted with any discriminatory or retaliatory intent. Plaintiff concedes that Jones and Diaz were not involved in the accommodations process but responds that both participated in the suspension and termination processes with unlawful motive.

Jones initiated the suspension process in March 2022, facilitated it, and signed Plaintiff's suspension and termination letters. Diaz oversaw Jones and supported terminating Plaintiff. Around that time, Delta was finalizing its transition

to requiring all flight attendants to wear the Plum or Grey uniform. The temporality between Plaintiff's second accommodations request, the suspension and termination processes—initiated and facilitated by Jones and Diaz—and Delta's uniform transition, could lead a reasonable jury to infer unlawful motive, as discussed in sections III(b) and III(c). There thus exists a reasonable dispute precluding summary judgment on aiding and abetting liability against Jones and Diaz for Plaintiff's discriminatory discharge and retaliation claims.

### 2. Sedgwick

Sedgwick argues that it routinely administered Plaintiff's leave and OJI claims and did not share Delta's discriminatory motive. Plaintiff agrees that Sedgwick had no role in the accommodations process but argues that it manufactured "a system where Plaintiff would fail" by deviating from its usual procedures and not informing Plaintiff of the "process to cover medical absences under OJI claims as non-accountable occurrences," creating accountable absences to justify her termination. Pl.'s Mem. Opp'n to Sedgwick at 20, 22–24, ECF No. 67. In fact, "Jones cited lack of coverage information from Sedgwick as grounds for Plaintiff's termination." *Id.* at 21.

Sedgwick responds that its deviation constituted negligence at most because it was not aware of Delta's unlawful motive and did not engage "in any specific conduct at the direction of Delta." Sedgwick Reply Mem. at 8–9, ECF No. 68. That

36

deviation affected Delta's decision to suspend and terminate Plaintiff by constricting her ability to render absences unaccountable. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 45 (2d Cir. 2000) ("Departures from procedural regularity can raise a question as to the good faith of the process where the departure may reasonably affect the [employment] decision"). It thus actually participated in the conduct behind Plaintiff's discriminatory discharge and retaliation claims.

But no evidence shows that Sedgwick shared Delta's intent or purpose. Although Sedgwick's deviation could indicate unlawful intent, "summary judgment is appropriate where 'whatever irregularities existed' were . . . unrelated to discrimination." *Hiramoto v. Goddard College Corp.*, 684 F. App'x 48, 50 (2d Cir. 2017) (summary order) (quoting *Weinstock*, 224 F.3d at 41, 45). No reasonable jury could find that discrimination motivated these irregularities. Plaintiff admits that her OJI claim coordinator did not know that Plaintiff requested accommodations. *See* Sedgwick SOF at ¶ 100. And Sedgwick could not share Delta's intent or purpose when it neither knew of nor implemented Delta's uniform transition strategy, which Plaintiff identifies as the source of Delta's animus. Plaintiff points to the weekly meetings between Sedgwick and Delta to discuss the status of uniform-related accommodations requests but does not argue or provide evidence that they discussed that strategy.

37

The Court does not mean that aiding and abetting liability always requires knowledge of the principal's intent or purpose. Both could independently form the shared intent. But where the principal's purpose stems from its specific corporate strategy, aiding and abetting liability cannot exist unless Sedgwick knew of it. That is especially true in the absence of other intent evidence. Thus, the Court grants summary judgment on Plaintiff's aiding and abetting claim against Sedgwick.

## IV.

For the foregoing reasons, Delta Defendants' motion for summary judgment is DENIED in part and GRANTED in part as to Plaintiff's FMLA claims. Sedgwick's motion for summary judgment is DENIED in part and GRANTED in part as to aiding and abetting liability against it. No claims remain against Sedgwick.

Accordingly, trial shall be held on the following counts: I–VIII and XI (as to Delta); IX–X (as to Jones and Diaz only). *See* Am. Compl., ECF No. 9.

**SO ORDERED.**

 _/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
January 23, 2025

38